FRANK M. FLANSBURG III, ESQ., NV Bar No. 6974
fflansburg@bhfs.com
MAXIMILIEN D. FETAZ, ESQ., NV Bar No. 12737
mfetaz@bhfs.com
SARAH K. VOEHL, ESQ., NV Bar No. 16646
svoehl@bhfs.com
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
Telephone: 702.382.2101
Facsimile: 702.382.8135

AARON F. MINER, ESQ. (*pro hac* forthcoming)
Aaron.Miner@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Telephone: 212.836.7811

CHASITY A. FAIR, ESQ. (*pro hac* forthcoming)
Chasity.Fair@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
Telephone: 202.942.5000

*Attorneys for Plaintiff HF Foods Group Inc.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| HF FOODS GROUP INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>ZHOU MIN NI and XIAO MOU "PETER" ZHANG,<br><br>Defendants. | CASE No.:<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |

51939970.1

HF Foods Group Inc. ("HF Foods" or the "Company"), by its attorneys, Brownstein Hyatt Farber Schreck, LLP and Arnold & Porter LLP, hereby files its Complaint against Defendants Zhou Min Ni and Xiao Mou "Peter" Zhang and alleges as follows, on information as to itself and on information and belief as to others:

## NATURE OF THE ACTION

1.　　Yet again, HF Foods comes before this Court seeking relief from a coordinated scheme by its founder (and serial securities law violator) Defendant Zhou Min Ni and his collaborators to effectuate an unlawful hostile takeover of HF Foods—this time, with a new accomplice, Defendant Peter Zhang.[1]  Defendants have formed an undisclosed shareholder group that purports to represent the holders of at least 57% of the Company's outstanding shares; failed to comply with mandatory disclosure obligations under Sections 13(d) and 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"); and are now taking steps to improperly reassert control over HF Foods Group Inc. in violation of the federal securities laws.

2.　　Following an SEC enforcement action, *Securities & Exchange Commission v. Jian Ming Ni et al.*, No. 24-CV-1632 (D.D.C.), Defendant Ni was permanently enjoined by federal court order entered on June 10, 2024, from "directly or indirectly participating in the management of, or otherwise exercising any control or influence over, HF Foods Group Inc. and any of its successors, including, but not limited to, the governance thereof."

3.　　Notwithstanding this unequivocal prohibition, and despite having previously agreed to a $9.25 million settlement for fiduciary duty breaches against the Company's shareholders, Ni has now enlisted Defendant Zhang in his attempt to form a shareholder group that, on information and belief, is orchestrating an unlawful campaign to pool their ownership interests and resources in a renewed attempt to seize control of HF Foods without making complete and accurate disclosure of their intentions to do so to HF Foods' stockholders. Thus, Defendants have once again flouted the requirements of the federal securities laws, which recognize the primacy of providing complete and accurate information to investors.

---

[1] *HF Foods Group Inc. v. Maodong Xu, et. al.*, No. 2:23-cv-00748 (D. Nev. filed May 11, 2023).

51939970.1

**JURISDICTION AND VENUE**

4.    This action arises under Sections 13(d) and 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78m(d) and 78n(a), and the applicable rules and regulations of the SEC.  This Court has jurisdiction over the federal claims under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331.  The acts complained of below have been carried out by use of the means and instrumentalities of interstate commerce.

5.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa.  Acts and transactions complained of below have occurred and continue to take place in this District.  Plaintiff's headquarters and principal place of business are in this District.

**THE PARTIES**

6.    HF Foods is a Delaware corporation with its principal executive offices located at 6325 South Rainbow Boulevard, Suite 420, Las Vegas, Nevada 89118.

7.    In August 2018, HF Foods became a public company and is publicly traded on the Nasdaq Global Select Market ("NASDAQ") under the ticker symbol "HFFG."

8.    Defendant Zhou Min Ni is the co-founder of HF Foods.  Ni served as the Company's chairman and sole CEO from August 2018 to November 2019, and as the Company's Co-CEO, alongside Defendant Zhang, from November 2019 until resigning effective February 23, 2021, while under investigation by the Securities and Exchange Commission ("SEC") and internal investigation by the Company. Upon information and belief, Defendant Ni is a resident of North Carolina.

9.    Defendant Zhang served as the Company's Co-CEO from November 2019 through February 2021.  Following Ni's resignation in February 2021, Zhang served as the sole CEO until his departure, effective October 24, 2024.  Defendant Zhang served as a director of the Company until June 2, 2025.  Upon information and belief, Defendant Zhang is a resident of Nevada.

51939970.1

**BACKGROUND**

**HF Foods**

10.     HF Foods, headquartered in Las Vegas, Nevada, is a leading marketer and distributor of fresh produce, frozen and dry food, meats, and non-food products, primarily to Asian and Chinese restaurants and other foodservice customers throughout the United States.  HF Foods aims to supply the increasing demand for Asian American restaurant cuisine, leveraging its nationwide network of distribution centers and its strong relations with growers and suppliers of fresh, high-quality specialty restaurant food products and supplies in the US, South America, and China.

11.     While HF Foods is publicly traded on NASDAQ, its stock is not widely held, and many of its significant stockholders are current and former Company employees or other insiders (e.g., family members of employees).

12.     As reported in the SEC's investigation, in 2017, Defendant Ni initiated plans to take HF Group public via a merger with a Special Purpose Acquisition Company.

13.     In August 2018, HF Group merged with Atlantic Acquisition Corp. to become HF Foods, a publicly traded company.

14.     As a result of the completion of the business combination, the former shareholders of HF Group were issued 19.97 million shares of stock, representing approximately 88.5% of the outstanding common stock, at a value of $10.00 each, based on a $199.7M valuation of the combined company.

15.     The HF Group management team continued to operate the business post-transaction and serve as executive management of the public company.  Defendant Ni was Chairman and CEO, and his wife, Chan Sin Wong, served as President and as a Director.

**Defendant Ni's History of Misconduct at HF Foods**

16.     On March 23, 2020, a Hindenburg Research analyst report outlined alleged misconduct and improprieties in the Company's operations that took place while Zhou Min Ni was acting as chair and Co-CEO.  In response to these allegations, the Company's Board of Directors

51939970.1

appointed a Special Committee of Independent Directors ("SIC") to conduct an independent investigation with the assistance of counsel.

17.    Defendant Ni's misconduct also triggered several federal securities fraud class action lawsuits, a shareholder derivative action filed in the Court of Chancery of the State of Delaware, and a formal SEC investigation. *See Jesus Mendoza v. HF Foods Group Inc. et al*, 2:20-cv-02929 (C.D. Cal. Mar. 29, 2020); *Walter Ponce-Sanchez v. HF Foods Group Inc. et al*, No. 2:20-cv-03967 (C.D. Cal. Apr. 30, 2020); *Jesus Mendoza v. Zhou Min Ni et al*, No. 2:20-cv-05300 (C.D. Cal. June 15, 2020); *Jim Bishop v. Zhou Min Ni et al*, No. 2:20-cv-10657 (C.D. Cal. Nov. 23, 2020); *Bishop v. Ni et al*, No. 1:20-cv-01103 (D. Del. Aug. 21, 2020); *Bishop v. Ni et al*, No. 2022-0736 (Del. Ch. Aug. 19, 2022).

18.    The shareholder derivative action in the Delaware Court of Chancery (the "Delaware Action"), which prompted the Company to create a Special Litigation Committee ("SLC") made up of independent directors with independent counsel, resulted in, among other things, Defendant Ni agreeing to refund $9.25 million in losses he caused the shareholders of HF Foods. That settlement was ratified by the Delaware Court of Chancery on September 8, 2023.

19.    Shamelessly, in spite of his corporate malfeasance, Defendant Ni secretly schemed to take back control of the Company from the independent directors who were investigating him and attempting to remediate the harm he had done. In early 2023, Defendant Ni worked with another known fraudster, Maodong Xu, in an attempt to replace the independent directors of the Board with sham board members beholden to Defendant Ni and Xu and to accomplish an illegal tender offer of the Company without making required disclosures under Sections 13(d) and 14(a) of the Securities Exchange Act—the very same securities laws Defendants Ni and Zhang have again violated three years later. On May 11, 2023, HF Foods filed suit in this Court based on the actions of Defendant Ni and his associates to effectuate an illegal hostile takeover of HF Foods. That suit ended in a settlement on November 7, 2024, pursuant to which Defendant Ni and his associates were required to file an accurate Schedule 13D.

20.    Meanwhile, investigations conducted by the SIC, SLC, and SEC found that Defendant Ni misappropriated millions of dollars from HF Foods and its investors through related-

51939970.1

party transactions that benefitted Defendant Ni and his family. The investigations further found that Defendant Ni misrepresented HF Group's and HF Foods' financial condition to auditors and investors, forcing HF Foods to restate its previous financial reports for FY 2019 and 2020, as well as certain 2018 financial information, in 2023. These investigations were extensive, time-consuming, and costly due to the efforts undertaken by Defendant Ni and his co-conspirators to conceal the schemes in which Defendant Ni enriched himself and his family. For example, the investigations uncovered that Defendant Ni financed a fleet of Ferraris and other expensive vehicles for Defendant Ni's teenage son, secretly financed by HF. To hide the activity, Defendant Ni spun off the Company's lucrative egg roll business to his son, despite the son having no operational responsibilities and HF employees continuing to operate the business. Defendant Ni's misconduct ultimately caused the Company to reconstitute its entire executive leadership team.

21. Defendant Ni tried to obstruct the investigation at various points, including by attempting on multiple occasions to retake control of the Board and to evict from the Board the independent members who had been charged with conducting the investigation. As a result, the settlement with the SEC included a broad officer and director bar described further below.

22. In an administrative proceeding on June 6, 2024, the SEC issued an Order Instituting Cease-and-Desist Proceedings Pursuant to Section 8A of the Securities Act of 1933 and Section 21C of the Securities Exchange Act of 1934, Making Findings, and Imposing a Cease-and-Desist Order (the "Cease-and-Desist Order"). HF Foods submitted an Offer of Settlement, without admitting or denying the findings as detailed in the Cease-and-Desist Order, which the SEC accepted.

23. The Cease-and-Desist Order noted HF Foods' cooperation and remedial efforts. HF Foods' SIC appointed external counsel to investigate the allegations made in the report. HF Foods also removed culpable individuals from its management including Defendant Ni, established more thorough disclosure controls, procedures, and internal control over financial reporting, and strengthened its internal compliance program.

24. Judge Friedrich entered the Judgment on June 10, 2024.

51939970.1

25. The Judgment permanently enjoined Defendant Ni from violating federal securities laws, barred him from serving as an officer or director of a public company, and ordered him to pay disgorgement, prejudgment interest, a civil penalty, and a SOX 304 reimbursement to HF Foods. The financial remedies were considered satisfied by the prior $9.25 million settlement in the Delaware Action.

26. The Judgment included a broad, sweeping set of restrictions to ensure that Defendant Ni would have nothing to do with HF Foods going forward, as follows: "Defendant is permanently restrained and enjoined from directly or indirectly participating in the management of, or otherwise exercising any control or influence over, HF Foods Group Inc. and any of its successors, including, but not limited to, the governance thereof; provided, however, that this injunction shall not prevent Defendant from voting, purchasing, or selling shares of HF Foods Group Inc. or its successors on his own behalf."

27. Notwithstanding the Judgment, on February 17, 2026, HF Foods was forced to file suit in the United States District Court for the District of Columbia based on Defendant Ni's continued efforts to exert control over, and divert business from, HF Foods. As alleged in *HF Foods Group Inc. v. Zhou Min Ni*, No. 26-cv-00511-DLF (D.D.C.) (the "D.D.C. Action"), Defendant Ni has, among other things: (a) continued to exercise operational control over the Ni Feng Call Center, a Chinese-language call center processing HF Foods' customer orders, in direct contradiction to sworn attestations to HF Foods and to the SEC; (b) obstructed HF Foods' efforts to transition call center operations to a new consolidated platform; (c) improperly acquired and weaponized HF Foods' confidential customer data to divert business to competing enterprises he controls; and (d) attempted to install a loyal associate, Richard Wagner, onto HF Foods' management.

28. The formation of the shareholder group described below represents the latest chapter in Defendant Ni's campaign. Upon information and belief, this undisclosed group includes Ni and reflects a coordinated effort to effectuate an unlawful takeover by reestablishing influence over the Company through proxies, agents, and affiliated persons acting in concert with Ni and Zhang, in contravention of the Judgment and the federal securities laws.

51939970.1

**HF Foods' June 5, 2026 Annual Meeting and 2026 Proxy Statement**

29.     On April 24, 2026, HF Foods issued a Schedule 14A proxy statement (the "2026 Proxy") and Notice of Annual Meeting of Stockholders (the "Annual Meeting Notice") for the Annual Meeting to be held on June 5, 2026 (the "Annual Meeting").  The Company set the close of business on April 15, 2026 as the record date for determining stockholders entitled to notice of and to vote at the Annual Meeting.  As of the record date, 53,475,417 shares of common stock were issued and outstanding.

30.     The 2026 Proxy and the Annual Meeting Notice advised stockholders that the Annual Meeting would be held to: (1) elect four members to the Board of Directors to serve until the 2027 Annual Meeting of Stockholders; (2) ratify the selection of BDO USA, P.C. as the Company's independent registered public accounting firm for the year ending December 31, 2026; (3) consider a non-binding advisory vote on the compensation of named executive officers; (4) approve, on an advisory basis, the frequency of the advisory approval of executive compensation; and (5) transact such other business as may properly come before the meeting.

31.     The 2026 Proxy, under the heading "Proposal 1: Election of Directors," nominated Xi "Felix" Lin, Richard Diaz, Dennis Lam, and Jeffery Taylor as the Board's director nominees for election at the Annual Meeting.

32.     The 2026 Proxy's "Principal Stockholders" section disclosed the following material beneficial ownership positions as of April 15, 2026, derived from Schedule 13D filings: (a) ***Zhou Min Ni, 3,555,673 shares (6.6% of class)***, ***per a Schedule 13D/A filed on December 22, 2023***; (b) the Irrevocable Trust for Raymond Ni (Zhou Min Ni's son, Fai Lam as trustee), 5,591,553 shares (10.5% of class), per a Schedule 13D/A filed on May 15, 2023; and (c) ***Xiao Mou "Peter" Zhang, 3,551,811 shares (6.6% of class), per a Schedule 13D/A filed on July 5, 2024***.

33.     The 2026 Proxy further disclosed that the trusts established by Ni for the benefit of his daughters Amanda Ni, Ivy Ni, and Tina Ni hold 798,793, 798,793, and 683,793 shares, respectively (2,281,379 in the aggregate), based on the Zhou Min Ni Form 4 filed July 12, 2021. Although Ni disclaimed beneficial ownership over those trusts in the Form 4, the formation of the

8

undisclosed shareholder group described herein provides independent grounds to attribute these holdings to Ni as part of the group's aggregate beneficial ownership for Section 13(d) purposes.

34.     The Schedule 13D filings underlying the 2026 Proxy's "Principal Stockholders" disclosures are now critically stale in light of the undisclosed group activity described herein. Defendants have made no disclosures whatsoever—either in those filings or since—of the formation of the 57% shareholder group, any coordinated plan among Ni, the Raymond Ni Trust, Zhang, or other affiliated shareholders, or any of the plans or proposals by the group with respect to the election of directors or governance of HF Foods.

35. Upon information and belief, Defendants Zhang and Ni have been actively soliciting stockholders of the Company to pool their ownership interests and resources in a coordinated attempt to seize control of HF Foods without making complete and accurate disclosures and without filing any proxy statement required to solicit shareholders to act by written consent.

**The Formation of an Undisclosed Shareholder Group**

36.     On June 11, 2026, Michael B. Lee, an attorney at the law firm Michael B. Lee, PC in Las Vegas, Nevada, sent a letter to HF Foods (the "Informal Demand") on behalf of Defendant Zhang and certain unidentified "majority shareholders."  The Informal Demand asserted that Defendant Zhang, "together with the shareholders on whose behalf he acts, represents the holders of at least 57% of the Company's outstanding shares."

37.     The Informal Demand requested that HF Foods produce, on an "informal" basis, a broad array of corporate records, including the Company's current Bylaws, board minutes, committee charters, director election records, shareholder meeting records, governance guidelines, and a comprehensive capitalization summary.

38.     The shareholder group described in the Informal Demand—which Defendant Zhang claims holds 57% of the outstanding shares—constitutes a "group" within the meaning of Section 13(d)(3) of the Exchange Act and SEC Rule 13d-5, 17 C.F.R. § 240.13d-5.  Upon information and belief, the group was formed for the purpose of influencing the management, governance, and/or control of HF Foods.  No member of the group has filed a Schedule 13D with the SEC disclosing the formation of this group, the identities of its members, their aggregate

9

51939970.1

beneficial ownership, or their plans and intentions with respect to the Company, as required by Section 13(d) and SEC Rule 13d-1(a), 17 C.F.R. § 240.13d-1(a).

39.     Upon information and belief, the shareholder group includes or has been formed at the direction of, or in coordination with, Defendant Ni.  Defendant Zhang's claim that he is acting on behalf of holders of 57% of the Company's shares demonstrates unequivocally that he is acting with a coalition assembled by Ni or at Ni's direction, given the concentrated nature of HF Foods' insider shareholding.  In addition, representatives of Defendants Ni and Zhang have been actively soliciting consents from significant holders of the Company's stock in an effort to garner support for a change of control of HF Foods.

40.     Defendant Ni's direction of and participation in the shareholder group also constitutes a violation of the Judgment, which bars Defendant Ni—and all persons acting in concert with him or as his agent, including Defendant Zhang—from exercising "any control or influence over" HF Foods, including its governance.

**Defendant Ni's Section 13(d) Violations**

41.     Defendant Ni is, on information and belief, a beneficial owner of more than 5% of HF Foods' outstanding shares, directly or indirectly through affiliates and associated entities.

42.     The prior settlement of the Nevada hostile takeover lawsuit required Defendant Ni and his associates to file a Schedule 13D, which they filed on December 22, 2023, in connection with that settlement.  Defendant Ni's Schedule 13D reflected 3,555,673 shares held directly.

43.     After the commencement of the D.D.C. Action that raised Defendant Ni's failures, Defendant Ni filed a late and inaccurate Schedule 13D on May 26, 2026, which failed to reflect material changes in his holdings, affiliations, group membership, and intentions with respect to HF Foods, including the formation of the undisclosed 57% shareholder group.

44.     Specifically, as of the formation of the undisclosed shareholder group and/or at such time as Defendant Ni or his affiliates began coordinating with Defendant Zhang for the purpose of influencing the control of HF Foods, Defendant Ni was obligated to file an amended Schedule 13D disclosing: (a) the formation of a group; (b) the identities of all members of the group; (c) the aggregate beneficial ownership of the group; (d) the purpose of the group's

51939970.1

acquisition and accumulation of Company shares; and (e) any plans or proposals regarding extraordinary corporate transactions, changes to the Board of Directors, or other material changes to the Company's business, capital structure, or governance. No such amended Schedule 13D has been filed.

**Defendant Zhang's Section 13(d) Violations**

45. Defendant Zhang, by his own attorney's assertion in the Informal Demand, is acting on behalf of a coalition holding at least 57% of the Company's outstanding shares. Whether Defendant Zhang himself holds more than 5% of the Company's shares, or is a member of a group that collectively holds more than 5% of such shares, he is independently obligated under Section 13(d) to file or cause to be filed a current and accurate Schedule 13D. No such current and accurate filing has been made. Defendant Zhang's failure to comply with this obligation has deprived the market, other shareholders, and HF Foods itself of material information about the identity, size, and intentions of the group acting in concert to influence the Company's governance.

46. Upon information and belief, Defendant Zhang, together with his immediate family members, hold approximately 10% of the Company's outstanding common stock. This total includes, among other holdings, 417,720 shares held by his spouse, per Zhang's July 5, 2024 Schedule 13D, as well as additional shares held by other immediate family members who are current or former employees or affiliates of the Company and who received shares in connection with the Company's 2019 business combination with B&R Global Foods, LLC or as compensation for services. No Schedule 13D or Schedule 13G has been filed disclosing the collective holdings of Defendant Zhang and his immediate family members as a group. To the extent these family members have agreed to act in concert with Defendant Zhang, they are among those acting in coordination with him, and their shares must be aggregated with Zhang's holdings for purposes of beneficial ownership disclosure under Section 13(d). The failure to file a Schedule 13D reflecting this aggregate position is a violation of Section 13(d) of the Exchange Act.

47. In addition, Zhang's Informal Demand for corporate records, which seeks broad governance documents, capitalization data, and Board composition records, is consistent with

11

51939970.1

preparatory steps for a proxy contest or other effort to change or influence control of HF Foods. Such activities are precisely what Section 13(d) was designed to disclose to shareholders.

**Undisclosed Consent Solicitation Activity**

48. Defendants Ni and Zhang and the members of the 57% shareholder group are further engaged in, or intend to engage in, the solicitation of consents from company shareholders in connection with a vote to elect directors, remove directors, or otherwise influence the governance of HF Foods. They have surreptitiously approached significant shareholder-employees of the Company and requested that they sign consents to effectuate changes of ownership, control, and governance of the Company. Such activity is subject to the consent solicitation rules under Section 14(a) of the Exchange Act and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9. Any such solicitation must be preceded by, or accompanied by, the filing of a proxy statement with the SEC disclosing accurate and complete information about the soliciting parties, their interests in Company securities, their plans and proposals, and any contracts, arrangements, or understandings among the group members.

49. Upon information and belief, Defendant Zhang has sought shareholders' support for a specific plan: (a) to add four new directors to the Company's Board of Directors, and (b) to secure his reappointment as the Company's CEO. In the course of these communications, Defendant Zhang has represented to shareholders that Defendant Ni supports and is participating in this effort. These communications constitute solicitations within the meaning of Rule 14a-1, 17 C.F.R. § 240.14a-1, as they are reasonably calculated to result in the procurement of written consents or other authorizations to effectuate the described changes in the Company's governance and leadership.

50. In addition, upon information and belief, Defendant Ni, or a representative acting on his behalf, has separately approached HF Foods' shareholders with requests to sign written instruments—believed to be written consents—in furtherance of the group's plan to change the composition of the Board and install Defendant Zhang as CEO.

51. To date, no proxy statement or preliminary proxy statement has been filed with the SEC by or on behalf of Defendant Zhang, Defendant Ni, or any member of the purported 57%

51939970.1

shareholder group.  Nevertheless, the formation of the group and the steps taken to advance its apparent plan to solicit written consents to change or influence the Company's governance—including the Informal Demand demanding corporate records—constitute the functional beginning of a campaign to influence the corporate franchise that implicates the proxy rules.

52.    The solicitation of written consents by or on behalf of Defendant Ni, an individual permanently enjoined from exercising control or influence over HF Foods' governance, is a direct violation of the Judgment and federal securities laws.

53.    Any solicitation of consents by Zhang, Ni, or other members of the group, absent the required disclosures under Section 14(a) and Rule 14a-9, constitutes a material violation of the federal securities laws.  HF Foods brings this action in part to prevent and enjoin any such undisclosed, non-compliant proxy solicitation.

### CLAIMS FOR RELIEF

### COUNT I

**Violations of Section 13(d) of the Exchange Act**

(Against Both Defendants)

54.    HF Foods repeats and realleges the allegations of paragraphs 1 through 53 of this Complaint as if fully set forth herein.

55.    Section 13(d) of the Exchange Act, 15 U.S.C. § 78m(d), requires any person or group that acquires more than five percent of a class of registered securities to file a detailed statement with the SEC and with the issuer of the security.  The purpose of the statute is to protect stockholders and the investing public against undisclosed, surprise shifts in corporate control by requiring timely disclosure of potential changes in corporate control before they occur.

56.    Section 13(d) provides that when two or more persons act as a group for the purpose of acquiring, holding, voting, or disposing of securities of an issuer, such group shall be deemed a "person" for purposes of the beneficial ownership threshold.  SEC Rule 13d-5(b)(1), 17 C.F.R. § 240.13d-5(b)(1), further provides that such a group is deemed to have acquired beneficial ownership of all securities of the relevant class beneficially owned by any member of the group as of the date on which they agreed to act as a group.

13

51939970.1

57.    Section 13(d) and SEC Rule 13d-1(a) require the reporting person or group to disclose, in its Schedule 13D filing, all material information concerning the plans and proposals of the acquiring person or group, including: (a) the identity and background of all persons who are members of the group; (b) the source and amount of funds or other consideration used in any purchases of stock; (c) the purpose of the  acquisition of securities, including a description of any plans or proposals for extraordinary corporate transactions; and (d) information as to any contracts, arrangements, or understandings with any person with respect to any securities of the issuer, including but not limited to the transfer of any of the securities and guarantees against loss or guarantees of profits. Schedule 13D must be filed within ten days after the acquisition of an interest greater than five percent.

58.    Defendants Ni and Zhang are members of a group within the meaning of Section 13(d)(3) and SEC Rule 13d-5, having agreed to act together for the purpose of acquiring, holding, voting, and/or disposing of securities of HF Foods, and for the purpose of influencing the management and governance of the Company.  This group holds, on its own admission, at least 57% of the Company's outstanding shares.  The group was formed at an unknown date prior to June 11, 2026, and no Schedule 13D has been filed since its formation disclosing the group, its members, their aggregate ownership, or their plans and proposals.

59.    Defendant Ni, independently, is a beneficial owner of more than 5% of the Company's outstanding shares, directly and indirectly through affiliates, and has failed to amend his Schedule 13D to disclose material changes in his plans, intentions, group membership, and coordination with other shareholders—including Zhang—for the purpose of influencing the management and governance of HF Foods.  Ni's continuing failure to file required amendments violates Section 13(d) and SEC Rule 13d-2, 17 C.F.R. § 240.13d-2.

60.    Defendant Zhang, independently, is acting on behalf of a group holding at least 57% of the Company's outstanding shares.  On information and belief, Zhang himself is a beneficial owner of Company shares, or is a member of a group that collectively holds more than 5% of such shares.  Zhang has failed to file a current and accurate Schedule 13D disclosing his

14

51939970.1

holdings, the formation of the group, its membership, or its plans and proposals, in violation of Section 13(d) and SEC Rule 13d-1(a).

61. As a direct and proximate result of Defendants' violations of Section 13(d), HF Foods and its shareholders have been and continue to be deprived of material information about the true identity and nature of the persons seeking to influence the governance of HF Foods, their aggregate beneficial ownership, and their plans and proposals. HF Foods and its shareholders have suffered and continue to suffer irreparable harm as a result. HF Foods and its shareholders have no adequate remedy at law and will be irreparably harmed in the absence of the declaratory and equitable relief HF Foods seeks due to Defendants' repeated failures to make full and accurate disclosures.

## COUNT II

### Violations of Section 14(a) of the Exchange Act

(Against Both Defendants)

62. HF Foods repeats and realleges each and every allegation contained in paragraphs 1 through 61 above as if fully set forth herein.

63. Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and the SEC's proxy rules promulgated thereunder govern the information to be furnished to security holders and to be filed with the SEC when the proxies, consents, or authorization of security holders are solicited. Section 14(a) makes it unlawful for any person to use the mails or the means or instrumentalities of interstate commerce to solicit or permit the use of his name to solicit any proxy or consent or authorization in contravention of the rules and regulations of the SEC. SEC Rule 14a-9 prohibits the solicitation of consents by means of communications that contain any statement that is false or misleading with respect to any material fact, or that omits to state any material fact necessary in order to make the statements therein not false or misleading.

64. Among other things, Section 14(a) requires persons acting as a group in soliciting consents to make disclosures regarding the identity of the members of the group, their interests in a company's securities, and any contracts, arrangements, or understandings among the members of the group in Schedule 14A filings. *See* 17 C.F.R. § 240.14a-101.

15

51939970.1

65. Defendants violated Section 14(a) and the SEC rules and regulations by failing to disclose the formation of their 57% shareholder group, the identities and backgrounds of its members, the contracts, arrangements, or understandings of its members with respect to the Company, its plans to change or influence control of HF Foods, the steps taken to advance that group's apparent plan to take over, change, or influence the governance of HF Foods, and the fact that it is acting in plain violation of the Judgment, including through the Informal Demand demanding corporate records in apparent furtherance of a governance campaign.

66. Upon information and belief, Defendants have already engaged in the communications described herein with other shareholders that constitute consent solicitations within the meaning of Rule 14a-1, 17 C.F.R. § 240.14a-1. Such solicitations have been conducted without the required disclosure and without complying with the requirements of the proxy rules.

67. Any solicitation of proxies or consents by Defendants or members of the group, absent the filing of a complete and accurate Schedule 14A proxy statement with the SEC disclosing the group's identity, aggregate ownership, and plans and proposals, constitutes a further violation of Section 14(a) and Rule 14a-9 and threatens immediate and irreparable harm to HF Foods and its stockholders.

68. Each day that passes without a corrective filing, particularly in light of Defendants Ni and Zhang's ongoing activity, constitutes a new violation under Section 14(a).

69. HF Foods' shareholders who have been approached by Defendants or their agents to sign written solicitation consents to support director changes have done so without access to material information, such as knowing the true identity and composition of the group soliciting their consent, the group's aggregate beneficial ownership, its plans for the Company, or the fact that the alleged architect of the scheme, Defendant Ni, is permanently enjoined from exercising control or influence over HF Foods.

70. Pursuant to Delaware law and the Company's bylaws, shareholders may take "any action which is required to be or may be taken at any annual or special meeting" by written consent without convening a formal meeting, including the election of directors and the amendment of

16

51939970.1

bylaws. Accordingly, at any time and without prior notice, the group formed by Defendants Ni and Zhang may act in a manner that could cause irreparable injury to the Company.

71. Consents obtained through undisclosed solicitations are legally defective. Nonetheless, if those consents are secured and lead to changes in board composition or management, unwinding those actions will be practically difficult for HF Foods. This resulting loss of board control and forced management changes is an independent form of harm to HF Foods.

72. The Company has been deprived of the ability to inform its stockholders of material information bearing on the solicitation, including Defendant Ni's history of misconduct, his permanent injunction, and the nature of the group's plans.

73. The Company's ability to maintain stable governance and pursue its long-term strategic plan is directly threatened by a coordinated campaign whose existence, membership, and intentions remain concealed in violation of the federal securities laws.

74. As a direct and proximate result of the acts and conduct of Defendants, HF Foods and its stockholders have been and continue to be deceived and defrauded. HF Foods and its stockholders have no adequate remedy at law for the ongoing and threatened violations of Section 14(a). HF Foods and its shareholders will suffer irreparable harm in the absence of the declaratory and injunctive relief HF Foods seeks due to Defendants' repeated and ongoing failures to make full and accurate disclosures.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff HF Foods Group Inc. respectfully requests that this Court enter judgment in its favor and against Defendants as follows:

1. Injunctive relief to enjoin Defendants from further violations of Sections 13(d) and 14(a) of the Exchange Act;

2. Injunctive relief directing Defendants to file with the SEC an accurate and complete Schedule 13D disclosing: (a) the formation of the group; (b) the identity of each member; (c) the aggregate beneficial ownership of the group; (d) the source and amount of funds used to acquire shares; and (e) all plans and proposals with respect to HF Foods;

17

51939970.1

3.    Injunctive relief to enjoin Defendants, and all persons acting in concert with them, from: (a) voting any shares of HF Foods held by or on behalf of the group, (b) soliciting proxies or consents, (c) acting upon, delivering, or relying on any written consents already obtained or hereafter obtained in connection with the group's campaign, and (d) taking any steps to change or influence the management or governance of HF Foods, unless and until Defendants have filed with the SEC a complete and accurate Schedule 13D and any required amendments thereto;

4.    Injunctive relief enjoining Defendants from soliciting proxies, consents, or voting authorizations from HF Foods stockholders in connection with the election of directors or any other matter requiring stockholder approval, unless and until Defendants have filed with the SEC a complete and accurate Schedule 14A proxy statement;

5.    Disenfranchisement and/or divestiture of shares as necessary to remedy ongoing violations of Section 13(d);

6.    Monetary damages, costs, and attorneys' fees resulting from Defendants' violations of the securities laws; and

7.    Such other and further relief as the Court finds proper, just, and equitable.

DATED this 24th day of June, 2026.

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By: */s/ Frank M. Flansburg III*
FRANK M. FLANSBURG III, ESQ., NV Bar No. 6974
fflansburg@bhfs.com
MAXIMILIEN D. FETAZ, ESQ., NV Bar No. 12737
mfetaz@bhfs.com
SARAH K. VOEHL, ESQ., NV Bar No. 16646
svoehl@bhfs.com
100 North City Parkway, Suite 1600
Las Vegas, NV  89106-4614
Telephone:  702.382.2101
Facsimile:  702.382.8135

[signatures continued next page]

18

51939970.1

ARNOLD & PORTER KAYE SCHOLER LLP

AARON F. MINER, ESQ. (*pro hac* forthcoming)
Aaron.Miner@arnoldporter.com
250 West 55th Street
New York, NY 10019-9710
Telephone: 212.836.7811

CHASITY A. FAIR, ESQ. (*pro hac* forthcoming)
Chasity.Fair@arnoldporter.com
601 Massachusetts Ave., NW
Washington, DC 20001
Telephone: 202.942.5000

*Attorneys for Plaintiff HF Foods Group Inc.*

51939970.1